[Cite as *State v. Redd*, 2015-Ohio-3164.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26273 |
| | : | |
| v. | : | Trial Court No. 2013-CR-3985 |
| | : | |
| ARLONDO E. REDD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of August, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. No. 0081844, 1370 North Fairfield Road, Suite C, Beavercreek, Ohio 45432
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Arlondo Redd appeals from his conviction for complicity to commit

aggravated robbery. Finding no error, we affirm.

## I. Background

{¶ 2} Redd and Kayin Pooler were indicted as co-defendants in January 2014 on one count of aggravated robbery with a deadly weapon. Redd later filed a motion to suppress arguing that statements he had made to police were made after unlawful, coercive custodial interrogation; that he did not knowingly and voluntarily waive his *Miranda* rights; and that even if he did waive his rights, he later revoked the waiver.

{¶ 3} Testifying at the suppression hearing were Detective Douglas Baker, one of the detectives who interviewed Redd, and Redd himself.[1] Detective Baker testified that he went over a *Miranda*-rights form (admitted as State's Exhibit 2) before asking Redd any questions. Baker said that Redd orally acknowledged that he understood each right and initialed next to each right listed on the form. Finally, said Baker, he had Redd read the waiver-of-rights section at the bottom of the form and sign the form. During the interview, Baker said, Redd eventually admitted that he was at the scene of the robbery but that Pooler was the one with the gun and the one who committed the crime. Redd also made a written statement in which he admitted being at the scene of the robbery. Redd claimed that the detectives "tricked" him into admitting that he was at the scene. Redd said that in response to coercive interrogation tactics he just told the detectives what they wanted to hear. According to Redd, his entire written statement is false and he was not at the scene when the robbery occurred.

---

[1] Pooler also filed a motion to suppress, and the suppression hearing was on Pooler's motion too. The detective who interviewed Pooler also testified at the hearing.

{¶ 4} At the end of the hearing, the trial court overruled Redd's motion to suppress and explained its rationale. The court concluded that *Miranda* warnings were required and that Detective Baker gave them. The court cited a waiver-of-rights form signed by Redd and said that the form corroborates Detective Baker's testimony that he complied with *Miranda*. On the question of whether Redd had voluntarily waived his rights, the court said that the critical issue was credibility—Detective Baker's versus Redd's. The court found Baker more credible. Based on Baker's testimony about the interview and the waiver-of-rights form, the court concluded that Redd had voluntarily waived his *Miranda* rights.

{¶ 5} Following the suppression hearing, Redd and the state entered into a plea agreement under which the state dismissed the indictment and Redd pleaded no contest to a bill of information charging him with complicity to commit aggravated robbery with a deadly weapon, but without a firearm specification which had been in the indictment.[2] The trial court sentenced Redd to three years in prison. Redd appealed.

{¶ 6} Redd's appellate counsel filed an *Anders* brief. In our independent review of the record, we found that the termination entry incorrectly stated that Redd had entered a plea of guilty. This being reversible error, we set aside the *Anders* brief and appointed new appellate counsel, giving counsel free reign to "raise any issues that new counsel wishes, including if appropriate those identified." Decision and Entry (Dec. 1, 2014). We turn now to the issues that new counsel has raised.

---

[2] Pooler pleaded guilty to the indicted offense of aggravated robbery with a deadly weapon and the firearm specification was dismissed.

## II. Analysis

{¶ 7} Redd assigns two errors to the trial court. The first alleges that defense counsel rendered ineffective assistance, and the second alleges that the trial court should not have accepted his no-contest plea.

### A. Ineffective assistance of counsel

{¶ 1} Redd argues in the first assignment of error that defense counsel was ineffective. To establish a claim that counsel's assistance was so defective as to require reversal of a conviction, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[T]he proper standard for attorney performance is that of reasonably effective assistance. * * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation omitted.) *Id.* at 689. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.*

{¶ 2} Redd contends that, at the suppression hearing, defense counsel should have objected to the state's cross-examination of him (Redd) because the state's questions exceeded the scope of direct examination. Redd says that direct examination of him was essentially limited to questions regarding the times of the police interviews and the comments that police made during those interviews. But on cross-examination, he says, the state asked about whether he had admitted to the robbery and whether he was

at the scene of the robbery when it was committed.

{¶ 3} "[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *U.S. v. Matlock*, 415 U.S. 164, 172-173, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). This is true of suppression hearings in Ohio. *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, ¶ 14, citing Evid.R. 101(C)(1) (the rules of evidence generally do not apply to admissibility determinations) and 104(A) (in making admissibility determinations a court is generally not bound by the rules of evidence). Even under the normal rules of evidence, "[i]n Ohio, cross-examination is not limited to the subject matter of direct examination. Compare Evid.R. 611(B) with Fed.R. Evid. 611(b). It is available for all matters pertinent to the case that the party calling the witness would have been entitled or required to raise." *State v. Treesh*, 90 Ohio St.3d 460, 481, 739 N.E.2d 749 (2001). *Accord State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 128 (saying that "[u]nder Evid.R. 611(B), cross-examination is not limited to the scope of direct examination, but may cover 'all relevant matters' "). Here, the state's cross-examination questions arose from Redd's claim that statements he made to police were coerced. The state sought to identify which statements were false and which were true. These questions are relevant to the issue of whether Redd voluntarily waived his *Miranda* rights. Therefore defense counsel cannot have rendered ineffective assistance by failing to object to relevant admissible evidence.

{¶ 4} The first assignment of error is overruled.

## B. Voluntariness of plea

{¶ 5} The second assignment of error alleges that the trial court should not have accepted Redd's no-contest plea, because he did not make the plea knowingly and voluntarily.

{¶ 6} "Crim.R. 11(C) imposes certain conditions on the trial court before it may accept a plea of guilty or no contest to a felony offense. The purpose of those requirements is to assure that the plea is knowingly, intelligently, and voluntarily made." *State v. Jones*, 2d Dist. Greene No. 03CA7, 2003-Ohio-4843, ¶ 5. Pertinent here is the requirement that "[i]n felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and * * * [d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *." Crim.R. 11(C)(2)(a).

{¶ 7} Here, before accepting Redd's plea, the trial court told him everything that Crim.R. 11(C)(2) says a court should tell a defendant. And the court determined that Redd understood what it was telling him. Along the way, Redd asked several questions. The court answered each of his questions until Redd said that he understood.

{¶ 8} An apparently important question that Redd had was why he could not appeal the denial of his motion to suppress before he was sentenced. Redd told the court:

I understand that if I plead no contest, they said I can go to prison and get a—I can get possible judicial release. And then they said I could probably appeal it with a expedite appeal. But I'm not understanding. If I can get judicial release and I leave after six months—say I get granted—I'm still not going come back for my appeal. And as far as I understand, I had—at my

motion to suppress hearing, I had inadequate counsel. So I know I could actually—my case really didn't allow me—I didn't really have nothing to do with this case. You know what I'm saying? And I just know I'm not understanding why I have to, you know what I'm saying, throw all my rights away when, if I can appeal it now, before this happened, maybe you would see—be lenient on my sentencing.

(Tr. 68-69).[3] The trial court explained that the reason he could not immediately appeal was that the suppression ruling was interlocutory and interlocutory rulings may not be appealed right away. The court assured Redd that he would be able to appeal after he had been sentenced. Redd said that he understood the court's explanation.

{¶ 9} Later, the trial court asked Redd if he understood that by pleading no contest he was giving up certain constitutional rights, and Redd answered, "I'm still thinking," (*Id.* at 77). He then asked the court another appeal question: "Say I found a flaw on my discovery packet or some flaws inside my case, how do I go about appealing that?" (*Id.*). The trial court told him that he could not appeal that issue because he could appeal only issues that he had already raised, like those in his motion to suppress. But, added the court, Redd might be able to obtain post-conviction relief on such grounds. Redd said that he understood. The court then asked him if he understood that he was giving up the constitutional rights it had mentioned earlier, and Redd replied that he did.

{¶ 10} Redd says that the numerous questions he asked during the plea hearing indicates that he did not understand the proceedings. We think that just the opposite is true: that Redd asked questions at the plea hearing suggests that when he finally did

---

[3] The transcript mistakenly identifies the speaker as the court.

enter his plea he did so knowingly and voluntarily. Redd's apparent belief that he had not been adequately represented at the suppression hearing does not show a failure to understand the consequences of pleading no contest. The trial court did not err by accepting Redd's no-contest plea.

{¶ 11} Redd also says that he denied an essential element of the charged offense and that this shows that he did not understand the nature of the charge to which he pleaded no contest. *Compare Jones*, 2003-Ohio-4843, at ¶ 28 (concluding that the trial court erred by accepting the defendant's guilty plea where the defendant denied certain conduct necessary to the offense and the court did not clarify the defendant's understanding). At the sentencing hearing, Redd claimed that he was innocent, telling the court, "I had nothing to do with this crime." (Tr. 84). But this claim of innocence is not relevant to the plea-voluntariness analysis, because it was made after Redd entered his plea. A defendant "cannot rely on post-plea statements or claims of innocence to establish that the trial court erred in accepting her plea. '[W]hen a defendant makes claims of innocence after a guilty plea has been accepted; a trial court has no duty to inquire into a defendant's reasons for pleading guilty.' The proper way to raise the issue at that point is a motion to withdraw the plea." *State v. Damron*, 2d Dist. Champaign No. 2014-CA-15, 2015-Ohio-2057, ¶ 10, quoting *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 13 (citing cases).

{¶ 12} The second assignment of error is overruled.

{¶ 13} One matter remains and that is the error in the judgment entry of conviction and sentencing, indicating that Redd entered a guilty plea when his plea was in fact one of no contest. We had noted this mistake in our *Anders* review. Before Redd filed his

present appellate brief, the trial court entered a *nunc pro tunc* termination entry that correctly states that Redd entered a plea of no contest. Redd acknowledges the correction and does not raise the error.

## III. Conclusion

{¶ 14} We have overruled all of the assignments of error. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Christina E. Mahy
Chris Beck
Hon. Timothy N. O'Connell